1

2

3

4

5

6

7

8

9

The Honorable Marsha J. Pechman

CC TO JUDGE DJ

FILED _____ ENTERED
_____ LODGED_ _ _ RECEIVED

NOV 19 2003   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                      DEPUTY

03-CV-02976-CMP

# UNITED STATES DISTRICT COURT

10

## WESTERN DISTRICT OF WASHINGTON

11

## AT SEATTLE

12

13

JAMES ODOM, on behalf of himself and all others similarly situated,

14

Plaintiff,

15

16

v.

17

MICROSOFT CORPORATION, a Washington corporation; BEST BUY CO., INC., a Minnesota corporation,

18

19

Defendants.

20

No. C03-2976P

**FIRST AMENDED**
**COMPLAINT - CLASS ACTION**

**DEMAND FOR JURY TRIAL**

21

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

22

## PARTIES

23

1.    Plaintiff James Odom is a resident of Moraga, California.

24

2.    Plaintiff Katherine Moureaux-Maloney is a resident of Reno, Nevada.

25

3.    Defendant Microsoft Corporation ("Microsoft") is a corporation organized under the

26

laws of the State of Washington and maintains its headquarters in Redmond, Washington.

27

4.    Defendant Best Buy Co. Inc. ("Best Buy") is a corporation organized under the laws of

28

the State of Minnesota and maintains its headquarters in Eden Prairie, Minnesota.

ORIGINAL

1    **JURISDICTION AND VENUE**

2        5.        This action asserts claims under the Racketeer Influenced and Corrupt Organizations Act

3    ("RICO"), 18 U.S.C. § 1961 et seq., the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., the

4    Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 et seq., and for unjust enrichment.

5    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1965(a), and

6    15 U.S.C. § 1693m(e).  Venue is proper in this District under 18 U.S.C. § 1965(a), because Defendants

7    reside, are found, have agents, or transact their affairs here.

8        **AGENCY AND CIVIL CONSPIRACY ALLEGATIONS**

9        6.        At all times herein mentioned, Defendants were the agents, principals, employees,

10   servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter

11   alleged, they each were acting within the scope and course of their authority as such agents, principals,

12   employees, servants, partners, joint venturers, and representatives, and were acting with the permission

13   and consent of the other Defendant.

14       7.        Microsoft and Best Buy had knowledge of and agreed to the misconduct alleged herein.

15   Microsoft and Best Buy conspired with each other to engage in the common course of misconduct

16   alleged herein, or aided and abetted that common course of misconduct, for the purpose of enriching

17   themselves at the public's expense, resulting in damage to Plaintiffs and all others similarly situated.

18       **SUBSTANTIVE ALLEGATIONS**

19       8.        Microsoft develops, licenses, and sells a wide range of computer software, including the

20   Windows operating-system software installed on most personal computers in the United States.

21   Microsoft also offers Internet access service through its MSN division and under the name "MSN."

22       9.        Best Buy is a leading retailer of consumer electronics, computers and computer-related

23   equipment, computer software, and consumer appliances.  Best Buy offers and sells these products

24   through a chain of retail stores that it owns and operates, and over the Internet.

25       10.       Under an agreement signed in April 2000, Microsoft invested $200 million in Best Buy

26   and agreed to promote Best Buy's online store through its MSN service.  In exchange, Best Buy agreed

27   to promote MSN service and other Microsoft products in its stores and advertising.  In Defendants' own

28   words (in a joint press release), this agreement is "a comprehensive strategic alliance that encompasses

First Amended Complaint, No. C03-2976P        2

1  broadband, narrowband, in-store and online efforts"; "provides for significant joint marketing in Best
2  Buy's retail stores, online and through print/broadcast vehicles, profit sharing, the promotion of
3  BestBuy.com to the 40 million users throughout Microsoft's properties, and technology assistance"; and
4  pursuant to which "MSN™ Internet access and Microsoft's full range of connectivity solutions will be
5  demonstrated and sold at the more than 350 Best Buy stores in the U.S. and through BestBuy.com," and
6  "Best Buy and BestBuy.com will receive prominent and preferred placement across Microsoft
7  properties, including MSNBC, the Expedia.com™ travel service, Hotmail™ Web-based e-mail service,
8  WebTV Network™, and the newly launched MSN eShop online shopping service."

9      11.     By agreement between Microsoft and Best Buy, one method by which Best Buy
10  promotes MSN service in its stores is to establish and activate MSN service accounts and trial
11  subscriptions in the names of Best Buy store customers. Best Buy activates these trial subscriptions in
12  the names of people when they buy something at a Best Buy store. Recently, for example, when people
13  have bought a new computer at a Best Buy store, Best Buy has activated six-months-free trial
14  subscriptions in their names. When people have bought any other merchandise, Best Buy has activated
15  30-days-free trial subscriptions in their names. Regardless of the length of trial period, however, the
16  course of conduct complained of herein has been uniform in all material respects.

17      12.     By agreement between Microsoft and Best Buy, the establishment and activation of
18  MSN trial subscriptions is carried out through compact discs issued by Microsoft and containing
19  Microsoft-developed software that, upon installation, enables one to access the MSN service ("Trial
20  CDs"). If the customer is paying for the merchandise by credit or debit card, the store employee
21  "swipes" the card through the magnetic-strip reader and "scans" the bar code on the Trial CD's
22  packaging using the laser device used for scanning the bar codes on merchandise presented for
23  purchase.

24      13.     By swiping the customer's credit or debit card and scanning the Trial CD at the checkout
25  counter, the Best Buy store employee sends the customer's credit or debit card information to Microsoft
26  and immediately establishes and activates an MSN service account and trial subscription in the
27  customer's name, using the telephone and other data transmission wires. Recently, the length of the
28  trial period has been set at six months if the customer is buying a new computer, and 30 days if the

1  customer is buying anything else.  If the customer does not cancel the subscription by the end of the trial
2  period, Microsoft, using the telephone and other data transmission wires, starts billing the person's
3  credit card account for MSN service charges, or deducts the charges from the account linked to the
4  person's debit card, on a monthly basis.

5      14.    Best Buy does not disclose to the customer, nor does the reasonable consumer expect,
6  that during the processing of the customer's purchase, his or her credit or debit card information is sent
7  to Microsoft and an MSN service account and trial subscription are established and activated in the
8  person's name.

9      15.    After the scanning of the Trial CD, sometimes the Best Buy employees give the Trial CD
10  to the customer, saying it is for a free trial subscription to MSN.  Customers reasonably understand the
11  representation to mean only that they have the option of establishing an MSN trial subscription by
12  installing the software on the Trial CD.  In other instances, the Best Buy employees have placed the
13  Trial CD together with the customer's merchandise in a Best Buy shopping bag without any explanation
14  to the customer.  In still other instances, the Best Buy employees do not give the Trial CD to the
15  customer at all.  If customers ask why the Trial CD was scanned, Best Buy tells them that it is for
16  inventory control or otherwise misrepresents the purpose of the scanning, and fails to disclose material
17  information concerning the purpose and consequences of the scanning.

18      16.    In short, neither Microsoft nor Best Buy secures valid authorization, in writing or
19  otherwise, to bill a customer's credit card account or withdraw funds from a customer's debit card
20  account for MSN charges.

21      17.    Customers do not discover that an account has been activated in their name until they
22  notice, after expiration of the trial subscription period, that monthly charges for MSN service have been
23  billed to their credit card accounts or deducted from their debit card accounts by Microsoft.  Because the
24  charges are in relatively small amounts, consumers might not notice the charges on their card statements
25  for some time.  If and when they do notice the charges, they must contact Microsoft to cancel their MSN
26  accounts and stop the unauthorized charges and to seek refunds of the charges.  Microsoft has directed
27  some consumers who contact Microsoft about the charges to seek relief from their credit or debit card
28  issuers.  No consumers have received (a) full refunds for the unauthorized monthly charges billed to or

First Amended Complaint, No. C03-2976P     4

1  deducted from their card accounts; plus (b) full refunds or compensation for the finance charges accrued
2  on such charges; plus (c) interest on the money paid by the consumers for the period it was held by
3  Microsoft; plus (d) compensation for the time, effort, and expense spent by the consumers in canceling
4  their MSN accounts and seeking refunds for the charges. Thus, no consumers have been placed in the
5  position they were in before Defendants, without the consumers' knowledge or valid authorization,
6  established MSN accounts in their names and assessed MSN charges against their credit or debit cards.

7      18.     The above policies and practices by Best Buy and its employees relating to scanning of
8  the Trial CDs   including but not limited to the deliberate failure to make disclosures and making of
9  misrepresentations – have been formulated and implemented by Best Buy jointly with Microsoft, by
10 agreement with Microsoft, and/or with Microsoft's knowledge and approval for the benefit of both Best
11 Buy and Microsoft.

12     19.     In May 2002, Plaintiff James Odom purchased a laptop computer at a Best Buy store in
13 Pleasant Hill, California, with payment by a credit card.  The Best Buy employee processing his
14 purchase scanned a Trial CD and, through the swiping of Mr. Odom's credit card, established and
15 activated a six-month MSN trial subscription in his name and sent his credit card information to
16 Microsoft.  The employee did not tell Mr. Odom that his credit card information was being sent to
17 Microsoft or that an MSN account was being established and activated in his name, nor was Mr. Odom
18 given any reasonable basis for believing these things were being done.

19     20.     At no time following his purchase of the laptop computer did Mr. Odom use the MSN
20 service, not knowing even that a subscription had been activated in his name.  After six months had
21 elapsed since Best Buy scanned the Trial CD, Microsoft started billing Mr. Odom's credit card account
22 for monthly MSN charges.  Microsoft billed Mr. Odom's credit card for the charges for two months.
23 Mr. Odom noticed the MSN charges on his credit card bills, called Microsoft, and cancelled the MSN
24 account that had been established in his name through Best Buy.  Mr. Odom paid the MSN charges as
25 part of his overall credit card bills.  He has not received any refund or credit for those charges.

26     21.     In September 2001, Plaintiff Katherine Moureaux-Maloney purchased a cell phone and
27 cell phone service plan at a Best Buy store in Reno, Nevada, with payment by a debit card.  The Best
28 Buy employee processing her purchase scanned a Trial CD and, through the swiping of Ms. Moureaux-

First Amended Complaint, No. C03-2976P          5

1  Maloney's debit card, established and activated a 30-day MSN trial subscription in her name and sent
2  her debit card information to Microsoft. The employee did not tell Ms. Moureaux-Maloney that her
3  debit card information was being sent to Microsoft or that an MSN account was being established and
4  activated in her name, nor was Ms. Moureaux-Maloney given any reasonable basis for believing these
5  things were being done. Ms. Moureaux-Maloney did not provide valid authorization in writing for
6  Microsoft to withdraw monthly MSN charges from her debit card account, nor did Best Buy or
7  Microsoft provide her with a copy of any such purported authorization when purportedly made.

8         22.    At no time following her purchase of the cell phone did Ms. Moureaux-Maloney use the
9  MSN service (not knowing even that a subscription had been activated in her name). In October 2000,
10 after 30 days had elapsed since Best Buy scanned the Trial CD, Microsoft started withdrawing monthly
11 MSN charges from Ms. Moureaux-Maloney's debit card account. Microsoft withdrew monthly MSN
12 charges from her debit card account for 17 months. In November 2003, Ms. Moureaux-Maloney
13 received a bill for monthly MSN charges for April, May, and June 2003, because Microsoft was unable
14 to continue withdrawing the charges from her debit card account. She and her husband immediately
15 contacted Microsoft and discovered that an MSN account had been established in her name through
16 Best Buy. Upon reviewing her bank statements, Ms. Moureaux-Maloney discovered previous
17 withdrawals Microsoft had made from her debit card account for monthly MSN charges.
18 Ms. Moureaux-Maloney has not received any refund for any of the MSN charges that Microsoft
19 withdrew from her debit card account, and Microsoft continues to seek payment from her of MSN
20 charges for April, May, and June 2003.

21                          **CLASS ACTION ALLEGATIONS**

22        23.    Plaintiffs bring this action on behalf of themselves and a plaintiff class initially defined
23 as follows:

24              All people in whose names an MSN service account and trial subscription
                were established and activated by the scanning of a Trial CD at a Best
25              Buy store, during the period from May 15, 1999 to the present.

26 Excluded from the class are Defendants, any entity in which any Defendant has a controlling interest,
27 Defendants' officers, directors, and employees; Defendants' legal representatives, heirs, successors, and
28 assigns; and any Judge to whom this case is assigned and his or her immediate family.

1      24.     Plaintiff Mourcaux-Maloney also bring this action on behalf of a subclass of the plaintiff

2  class initially defined as follows:

3          All people in whose names an MSN service account and trial subscription
            were established and activated by the scanning of a Trial CD and the
4          swiping of their debit card at a Best Buy store, during the period from
            May 15, 2002 to the present, and from which debit card account
5          Microsoft subsequently withdrew amounts for monthly MSN charges.

6      25.     This action has been brought and may be maintained as a class action under Rule 23 of

7  the Federal Rules of Civil Procedure.

8      26.     **Numerosity of the class – Fed. R. Civ. P. 23(a)(1).**  Class and subclass members are so

9  numerous that their individual joinder herein is impracticable.  Plaintiffs estimate that the class numbers

10  in the thousands or tens of thousands, and that the subclass numbers in the hundreds or thousands.  The

11  precise number of class and subclass members and their addresses are unknown to Plaintiffs, but can be

12  obtained from Microsoft's and Best Buy's records.  Class and subclass members may be notified of the

13  pendency of this action by mail, supplemented by published notice if deemed necessary by the Court.

14      27.     **Existence and predominance of common questions of fact and law – Fed. R. Civ.**

15  **P. 23(a)(2), 23(b)(3).**  Common questions of law and fact exist as to all class and subclass members.

16  These questions predominate over the questions affecting only individual class or subclass members

17  and include:

18          (a)    Whether the transmission of a Best Buy store customer's credit or debit card

19                information to Microsoft through Best Buy's scanning of a Trial CD, without

20                adequate notice or disclosure to the customer, constitutes wire fraud;

21          (b)    Whether the establishment and activation of an MSN service account and trial

22                subscription in a Best Buy store customer's name through Best Buy's scanning of

23                a Trial CD, without adequate notice or disclosure to the customer, constitutes

24                wire fraud;

25          (c)    Whether Defendants, by their agreement that Best Buy will promote MSN

26                Internet access service and their activities in furtherance of the agreement,

27                constitute an "enterprise" as defined in 18 U.S.C. § 1961(4) that is engaged in, or

28                the activities of which affect, interstate or foreign commerce;

(d) Whether the policies and practices described above constitute Defendants' conduct or participation, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity;

(e) Whether Defendants have violated 18 U.S.C. § 1962(c);

(f) Whether Defendants have conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1964(d);

(g) Whether Defendants have initiated electronic transfers of funds from the debit card accounts of subclass members on a recurring basis, at substantially regular intervals, without first obtaining the subclass members' valid authorization in writing or providing them with a copy of any such purported authorization;

(h) Whether Defendants have violated 15 U.S.C. § 1693e with respect to the subclass members;

(i) Whether the transmission of a Best Buy store customer's credit or debit card information to Microsoft through Best Buy's scanning of a Trial CD, without adequate notice or disclosure to the customer, is a practice that has the capacity to deceive a substantial portion of the public;

(j) Whether the establishment and activation of an MSN service account and trial subscription in a Best Buy store customer's name, through Best Buy's scanning of a Trial CD that it then gives to the customer, without adequate notice or disclosure to the customer, is a practice that has the capacity to deceive a substantial portion of the public;

(k) Whether Defendants have violated the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020;

(l) Whether Defendants have been unjustly enriched through the conduct complained of;

(m) Whether Defendants can show that they obtained valid authorization from all class members to bill class members' credit card accounts or withdraw funds from class members' debit card accounts for MSN charges.

1    28.    **Typicality – Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of the
2    class, because, as with all other class members, an MSN service account and trial subscription were
3    established and activated in their names by Best Buy's scanning of a Trial CD at a Best Buy store.
4    Plaintiff Moureaux-Maloney's claims are typical of the claims of the subclass, because, as with all other
5    subclass members, an MSN service account and trial subscription were established and activated in her
6    name by Best Buy's scanning of a Trial CD at a Best Buy store and swiping of her debit card at a Best
7    Buy store, and Microsoft subsequently withdrew amounts from that debit card account for monthly
8    MSN charges.

9    29.    **Adequacy – Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are adequate representatives of the class
10   and subclass, because their interests do not conflict with those of the class or subclass, and they have
11   retained counsel experienced and competent in consumer class action litigation.  The interests of the
12   class and subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

13   30.    **Superiority – Fed. R. Civ. P. 23(b)(3).**  The class action is superior to other available
14   means for the fair and efficient adjudication of class and subclass members' claims.  The damages or
15   other financial detriment suffered by individual class and subclass members is relatively small
16   compared to the burden and expense that would be entailed by individual litigation of their claims
17   against Defendants.  It would thus be virtually impossible for class and subclass members, on an
18   individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if class and
19   subclass members could afford such individualized litigation, the court system could not.
20   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from
21   the same set of facts.  Individualized litigation would also increase the delay and expense to all parties
22   and the court system from the issues raised by this action.  By contrast, the class action device provides
23   the benefits of adjudication of these issues in a single proceeding, economics of scale, and
24   comprehensive supervision by a single court, and presents no unusual management difficulties under
25   the circumstances here.

26   31.    In the alternative, the class and subclass may be certified under Rule 23(b)(1) and/or
27   (b)(2), because:

28

1                (a)     the prosecution of separate actions by individual class or subclass

2     members would create a risk of inconsistent or varying adjudication with respect to

3     individual class or subclass members that would establish incompatible standards of

4     conduct for Defendants;

5                (b)     the prosecution of separate actions by individual class or subclass

6     members would create a risk of adjudications with respect to them that would, as a

7     practical matter, be dispositive of the interests of other class or subclass members not

8     parties to the adjudications, or substantially impair or impede their ability to protect their

9     interests; and/or

10            (c)     Defendants have acted or refused to act on grounds generally applicable

11     to the class and subclass, thereby making appropriate final and injunctive relief with

12     respect to the members of the class and subclass as a whole.

## FIRST CLAIM FOR RELIEF

### (For Violations Of RICO, 18 U.S.C. § 1962(c))

32.     Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference each allegation set forth above as if fully set forth here, and further allege as follows:

33.     Defendants are "persons" as defined in 18 U.S.C. § 1961(3).

34.     Defendants's agreement that Microsoft will advertise and promote Best Buy and its online store on its MSN Internet access service and various Microsoft-owned Websites, while Best Buy will advertise and promote MSN service in its "bricks and mortar" and online stores, together with Defendants' activities in furtherance of the agreement, constitute an "enterprise" as defined in 18 U.S.C. § 1961(4). Furthermore, this enterprise is engaged in, and its activities affect, interstate or foreign commerce.

35.     The material decisions guiding the operation of this enterprise – including but not limited to decisions concerning the form and content of campaigns, advertising, and other vehicles used by either Defendant to promote the other's products and services pursuant to their agreement (and including the design and implementation of the mechanisms through which MSN accounts are

1  established by the swiping of a Best Buy store customer's credit or debit card and the scanning of a
2  Trial CD) – are made by Defendants jointly.

3       36.     Defendants' policies, practices, and acts described above constitute wire fraud under
4  18 U.S.C. § 1343, in that they constitute or are in furtherance of a scheme or artifice to defraud or
5  obtain money by means of false or fraudulent pretenses, furthered or executed through Defendants'
6  transmission of writings, signals, or data by means of wire.

7       37.     By establishing MSN accounts in the names of thousands or tens of thousands of
8  consumers without their knowledge and assessing MSN charges against their credit or debit cards,
9  through the course of conduct described above, Defendants have committed wire fraud thousands or
10  tens of thousands of times over the past four years and thus engaged in a "pattern of racketeering
11  activity" as defined in 18 U.S.C. § 1961(5).

12      38.     Defendants have used a structure separate and apart from their acts of wire fraud to
13  distribute the proceeds of the transactions.  In particular, for each MSN trial subscription and account
14  established and activated at a Best Buy store, Best Buy receives a flat payment from Microsoft.  When
15  the trial period ends and Microsoft starts billing the customer for monthly MSN charges, Microsoft
16  gives Best Buy a portion of each monthly MSN charge paid by the customer.

17      39.     Therefore, Defendants have violated 18 U.S.C. § 1962(c) in that they are associated with
18  an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and have
19  conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a
20  pattern of racketeering activity.

21      40.     Plaintiffs and the other class members have been injured in their business or property by
22  reason of Defendants' violations of 18 U.S.C. § 1962(c).  Accordingly, Plaintiffs, on behalf of
23  themselves and all others similarly situated, seek treble damages and costs of suit, including a
24  reasonable attorneys' fee.

25                    **SECOND CLAIM FOR RELIEF**

26                  **(For Violations Of RICO, 18 U.S.C. § 1962(d))**

27      41.     Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by
28  reference each allegation set forth above as if fully set forth here, and further allege as follows:

First Amended Complaint, No. C03-2976P          11

1    42.    Defendants agreed to participate in the affairs of the enterprise described above through
2 the commission of two or more predicate offenses by either of them.  In particular, Defendants agreed to
3 commit wire fraud thousands or tens of thousands of times over the past four years, as described above,
4 and in fact did so.

5    43.    Therefore, Defendants have conspired to violate 18 U.S.C. § 1962(c), in violation of
6 18 U.S.C. § 1962(d).

7    44.    Plaintiffs and the other class members have been injured in their business or property by
8 reason of Defendants' violations of 18 U.S.C. § 1962(d).  Accordingly, Plaintiffs, on behalf of
9 themselves and all others similarly situated, seek treble damages and costs of suit, including a
10 reasonable attorneys' fee.

11                    **THIRD CLAIM FOR RELIEF**

12    **(For Violations Of The Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.)**

13    45.    Plaintiff Moureaux-Maloney, on behalf of herself and the subclass, incorporates by
14 reference each allegation set forth above as if fully set forth here, and further alleges as follows:

15    46.    This claim is asserted on behalf of the subclass defined above.

16    47.    Defendants have initiated electronic transfers of funds from the debit card accounts of
17 subclass members on a recurring basis, at substantially regular intervals, without first obtaining the
18 subclass members' valid authorization in writing or providing them with a copy of any such purported
19 authorization.

20    48.    Therefore, Defendants have violated 15 U.S.C. § 1693e.

21    49.    Accordingly, on behalf of herself and the subclass, Plaintiff Moureaux-Maloney seeks
22 actual damages, statutory damages, and costs of suit, including a reasonable attorneys' fee, under
23 15 U.S.C. § 1693m.

24                    **FOURTH CLAIM FOR RELIEF**

25            **(For Violations Of The Washington Consumer Protection Act,**

26                **Wash. Rev. Code § 19.86.010 et seq.)**

27    50.    Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by
28 reference each allegation set forth above as if fully set forth here, and further allege as follows:

First Amended Complaint, No. C03-2976P        12

51.     Microsoft and Best Buy are "persons" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(1), and conduct "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(2).

52.     Plaintiffs and members of the class are "persons" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(1), and the payments for MSN charges wrongfully obtained from Plaintiffs and members of the class constitute "assets" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(3).

53.     Defendants' actions are unfair and/or deceptive within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 et seq.

54.     Defendants' actions as alleged herein occurred in the conduct of trade or commerce directly or indirectly affecting the people of the State of Washington through their retail and Internet service businesses, and as well as the people of all of the other fifty States and the District of Columbia.

55.     Defendants' actions as alleged herein have the tendency or capacity to mislead consumers in that MSN accounts were established in the names of consumers and their credit or debit card information sent to Microsoft without adequate disclosure to the consumers, including but not limited to disclosure that an account was being established and activated in their names, that their credit or debit card information was being sent to Microsoft, and that monthly MSN charges would be billed to their credit or debit cards after the account trial period expired.

56.     Defendants' general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

57.     Defendants' conduct injured Plaintiff's property and the property of all others similarly situated.

58.     Plaintiffs and members of the class are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages; costs of suit, including a reasonable attorneys' fee; and such further equitable relief as the Court may deem proper.

1

## FIFTH CLAIM FOR RELIEF

### (For Unjust Enrichment)

59.     Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference each allegation set forth above as if fully set forth here, and further allege as follows:

60.     A benefit was conferred on Defendants when Plaintiffs and members of the class were unknowingly signed up for MSN Internet service and payments for monthly MSN charges wrongfully obtained from them.

61.     Defendants were aware and had knowledge of the benefit they were receiving and have enjoyed their financial gains.

62.     Despite the misleading and deceptive nature by which Plaintiffs and other consumers were unknowingly signed up for MSN Internet service, Defendants accepted and retained the full benefit of payments from Plaintiffs and members of the class.

63.     Defendants' retention of this benefit is inequitable and must be returned to Plaintiffs and members of the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

A.      An order certifying the proposed plaintiff class and subclass under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the class and subclass;

B.      Actual damages;

C.      Treble damages;

D.      Statutory damages under 15 U.S.C. § 1693m;

E.      An injunction prohibiting Defendants from engaging in the conduct complained of;

F.      Attorneys' fees and costs of suit, including expert-witness fees and prejudgment interest; and

G.      Such other relief as the Court may deem proper.

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand a trial by jury on all claims so triable.

3    DATED:  November 19, 2003                    COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

4

5                                                 By:

6                                                    Keelyn M. Friesen

7                                                 701 Fifth Avenue, Suite 6860
                                                  Seattle, Washington 98104-7097
8                                                 Telephone:  (206) 521-0080
                                                  Facsimile:  (206) 521-0166
9
                                                  Andrew N. Friedman
10                                                COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
                                                  West Tower, Suite 500
11                                                1100 New York Avenue NW
                                                  Washington, DC 20005
12                                                Telephone:  (202) 408-4600
                                                  Facsimile:  (202) 408-4699
13
                                                  Eric H. Gibbs
14                                                Rosemary M. Rivas
                                                  GIRARD GIBBS & DE BARTOLOMEO LLP
15                                                601 California Street, Suite 1400
                                                  San Francisco, California 94108
16                                                Telephone:  (415) 981-4800
                                                  Facsimile:  (415) 981-4846
17
                                                  Anthony K. Lee
18                                                Attorney at Law
                                                  580 California Street, 16th Floor
19                                                San Francisco, California 94104
                                                  Telephone:  (415) 439-4862
20                                                Facsimile:  (415) 439-4962

21                                                Attorneys for Individual and Representative Plaintiffs
                                                  James Odom and Katherine Moureaux-Maloney
22

23

24

25

26

27

28

The Hon. Marsha J. Pechman

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
9      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10

11

12 | JAMES ODOM, on behalf of himself            )
    and all others similarly situated,          ) No. C03-2976P
13                                               )
                    Plaintiff,                   )
14                                               ) CERTIFICATE OF SERVICE
         vs.                                     )
15                                               )
    MICROSOFT CORPORATION, et al.,               )
16                                               )
                    Defendants.                  )
17 |_____)

18

19         I hereby certify that on November 19, 2003:

20         FIRST AMENDED COMPLAINT

21         was served upon the following counsel via the methods indicated:

22

23

24

25

26

CERTIFICATE OF SERVICE – 1 of 2

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
701 Fifth Avenue, Suite 6860
Seattle, WA 98104-7097
(206) 521-0080

| | |
|---|---|
| **Counsel For Plaintiff:** | **Counsel For Defendants:** |

**Counsel For Plaintiff:**

Andrew N. Friedman
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
West Tower, Suite 500
1100 New York Avenue NW
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
( **X** ) Mail    ( ) Hand Delivery
( ) Fax       ( ) Overnight Delivery


Eric H. Gibbs
Rosemary M. Rivas
GIRARD GIBBS & DE BARTOLOMEO LLP
601 California Street, Suite 1400
San Francisco, California  94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
( ) Mail       ( ) Hand Delivery
( ) Fax       ( **X** ) Overnight Delivery


Anthony K. Lee
Attorney at Law
580 California Street, 16th Floor
San Francisco, California 94104
Telephone:  (415) 439-4862
Facsimile:  (415) 439-4962
( ) Mail       ( ) Hand Delivery
( ) Fax       ( **X** ) Overnight Delivery


Signed this day the 19TH of November, 2003.

**Counsel For Defendants:**

Jonathan M. Palmer
Felix Luna
Heller, Ehrman, White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7098
Telephone:  (206) 447-0900
Facsimile:  (206) 447-0849
( ) Mail      ( **X** ) Hand Delivery
( ) Fax       ( ) Overnight Delivery


James R. Murray
Gordon, Murray, Tilden LLP
1325 Fourth Avenue, Suite 1800
Seattle, WA 98101-2510
Telephone:  (206) 467-6477
Facsimile:  (206) 467-6292
( ) Mail      ( **X** ) Hand Delivery
( ) Fax       ( ) Overnight Delivery


Charles C. Sweedler
Peter Breslauer
Charles B. Casper
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street, 24th Floor
Philadelphia, PA 19109
Telephone:  (215) 772-1500
Facsimile:  (215) 772-7620
( **X** ) Mail    ( ) Hand Delivery
( ) Fax       ( ) Overnight Delivery

J. Kevin Snyder
Stacy S. Schwartz
Robins, Kaplan, Miller & Ciresi LLP
Ste. 379
2049 Century Park East
Los Angels, CA 90067
Telephone:  (310) 552-0130
( **X** ) Mail    ( ) Hand Delivery
( ) Fax       ( ) Overnight Delivery


_____
Lynn A. Rinehardt

CERTIFICATE OF SERVICE – 2 of 2

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
701 Fifth Avenue, Suite 6860
Seattle, WA 98104-7097
(206) 521-0080