UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES ODOM, on behalf of himself and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation; BEST BUY CO., INC., a Minnesota corporation,<br><br>Defendants. | No. C03-2976P<br><br>ORDER DISMISSING COUNTS ONE AND TWO OF THE FIRST AMENDED COMPLAINT |

This matter comes before the Court on defendants' Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Electronic Funds Transfer Act ("EFTA"). The Court heard oral arguments on March 12, 2004, and gave counsel leave to file additional pleadings regarding the EFTA claim. Having reviewed the papers and pleadings submitted by the parties, and having heard oral arguments by all parties, the Court hereby GRANTS IN PART the motion to dismiss with respect to the RICO claims.

BACKGROUND

This is a putative class action against defendants the Microsoft Corporation ("Microsoft") and Best Buy Stores, L.P., erroneously sued as Best Buy, Co., Inc. ("Best Buy") (together "defendants"). Defendants entered into a joint merchandising agreement in April 2000, under which the two

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 1

companies agreed to promote one another's products and to share profits from the joint marketing. One feature of the joint marketing agreement was that a trial membership to the Microsoft Network ("MSN") internet service would be included with every purchase of certain products from Best Buy stores.

This suit arises out of sales transactions at Best Buy stores during which Best Buy employees allegedly activated a "trial" MSN service account without the customer's consent or awareness. Plaintiffs allege that MSN accounts were activated without disclosure to the customer, that the customer's debit or credit card information was transmitted to Microsoft, and that upon the expiration of the trial period, customers were billed monthly for services they were as yet unaware they had been signed up for. Monthly billing continued until the customer contacted Microsoft to have the service cancelled.

Plaintiffs assert that the experiences of named plaintiffs Katherine Moreaux-Maloney and James Odom are representative of the experience of numerous customers at Best Buy stores. Named plaintiff Katherine Moreaux-Maloney bought a cellular phone and a cellular service plan in September 2001 from a Best Buy store in Reno, Nevada, and paid with a debit card. Named plaintiff James Odom bought a laptop computer in May 2002 from a Best Buy store in Pleasant Hill, California, and paid on a credit card. Plaintiffs allege that at the time of the purchase, the Best Buy employee who processed the sale transaction scanned the bar code from a compact disc ("trial CD") containing a trial membership to MSN. Scanning the trial CD automatically activated an MSN service account in the customer's name, and because the account is activated in conjunction with the customer's payment on debit or credit card, that card's information is transmitted to Microsoft.

According to the complaint, neither plaintiff was told by the Best Buy employee at the checkout counter that an MSN account was activated, or that the customer's debit or credit card information was being sent to Microsoft. Plaintiffs allege that in some cases Best Buy employees made misleading statements to prevent the customer's discovery of MSN account activation. Neither named plaintiff used the MSN service after the purchase, since neither knew that she was subscribed

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 2

to the service. Ms. Moreaux-Maloney's trial subscription lasted for thirty days, while Mr. Odom's trial subscription lasted for six months. At the end of the trial period, each plaintiff was billed monthly by Microsoft on the card used for payment at Best Buy. Mr. Odom discovered the charge on his credit card bill two months after billing began. Ms. Moreaux-Maloney did not discover the monthly transfers from her bank account to Microsoft until March 2003, eighteen months after her Best Buy purchase and seventeen months after the billings began. After cancellation of the accounts, Microsoft directed plaintiffs to seek refunds from their credit card company and bank, respectively. To date, it is alleged that no plaintiff has yet been compensated in full for the amounts paid to Microsoft, interest on those amounts for the time the money was in Microsoft's possession, finance charges on amounts outstanding on credit cards, and compensation for the time and energy spent to get refunds.

## PROCEDURAL BACKGROUND

The initial complaint in this case was filed on May 15, 2003, in District Court for the Northern District of California, San Francisco Division. (Dkt. No. 45, p. 31). At the same time, plaintiffs' attorneys filed state court class actions in California and Washington based on the same set of facts. The Washington State case is currently proceeding, and the California court stayed the action in that state pending further proceedings in the Washington state case.

The initial complaint in federal court raised two claims, both under RICO. (Dkt. No. 45, p. 40). On Microsoft's motion, the case was transferred to this District on October 1, 2003, under a forum selection clause in the MSN account contract activated at the time of the sale at Best Buy. (Dkt. No. 45). Microsoft struck its simultaneous Motion to Dismiss based on plaintiffs' indicated intent to amend the complaint.

Plaintiffs filed a First Amended Complaint on November 19, 2003. That complaint added named plaintiff Ms. Moreaux-Maloney, as well as claims under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., the Washington Consumer Protection Act, R.C.W. § 19.86.010 et seq., and for unjust enrichment. (Dkt. No. 57).

This Motion to Dismiss follows the First Amended Complaint.

## ANALYSIS

### 1. 12(b)(6) Legal Standard

A motion to dismiss under Rule 12(b)(6) will only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief." Gilligan v. Jamco Development Corp., 108 F.3d 246, 248 (9th Cir. 1997). Dismissal of a complaint under a 12(b)(6) motion should be without prejudice unless it is clear that amendment could not possibly cure the complaint's deficiencies. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998), see also Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

Review of a 12(b)(6) motion "is limited to the contents of the complaint . . . [and] all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Chang, 80 F.3d at 1296 (citing Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989); Everest and Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). Conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. Associated Gen. Constr. v. Metro. Water District, 159 F.3d 1178, 1181 (9th Cir. 1998).

### 2. Claims Under RICO, 18 U.S.C. § 1962

Plaintiffs' first two claims are brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Subsection (d) of the same section makes it unlawful to conspire to violate any provision of RICO.

To prove a violation of RICO § 1962 (c), plaintiffs must establish the existence of an enterprise that affected interstate or foreign commerce, the defendants' employment by or association with the enterprise, that the defendant conducted or participated, directly or indirectly in the conduct

of the enterprise's affairs, and that the participation was through a pattern of racketeering activity. Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1309-10 (9th Cir. 1992), cert. denied, 507 U.S. 1004 (1993). Defendants contend that plaintiffs fails to allege facts that support a finding of the existence of an enterprise or of the predicate acts of racketeering activity.

A. Existence of an "Enterprise" under RICO

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct, proved by evidence of an ongoing organization, either formal or informal, and that the various associates function as a continuing unit. United States v. Turkette, 452 U.S. 576, 583 (1981). Though the evidence used to establish the enterprise as an entity may overlap with the evidence that proves the predicate acts of the racketeering activity, "proof of one does not necessarily establish the other." Id. In other words, the plaintiff must prove the existence of the enterprise as an entity separate and apart from the pattern of activity in which it engages. Id.

Ninth Circuit case law defining the "separate structure" requirement is less than clear. The separate structure requirement can be satisfied by a corporation's involvement in the racketeering activity because it has a legal existence and conducts legal activities distinct from the alleged racketeering activities. Chang v. Chen, 80 F.3d 1293, 1300 (9th Cir. 1996); Cf. Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1083-84 (9th Cir. 2000) (separate structure requirement unsatisfied by the legal corporate structures of numerous defendant insurance companies, employee benefit plans, employers, and government entities where the plaintiff did not allege a separate structure linking the defendants beyond the alleged conspiratorial behavior). The Ninth Circuit has found joint ventures between corporate entities to be RICO enterprises, but only where the joint ventures possess the required characteristics of an enterprise. See United Energy Owners Committee, Inc. v. United Energy Management Systems, Inc., 837 F.2d 356, 363-64 (9th Cir. 1988); see also Medallion Television Enterprises v. SelecTV of California, Inc., 833 F.2d 1360 (9th Cir. 1987).

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 5

Notably, the cases where joint ventures constituted enterprises predate <u>Chang</u>, the controlling case in the Ninth Circuit. Though none is specifically overruled by <u>Chang</u>, it is evident that this Circuit's standard was less stringent prior to that ruling. <u>See, e.g.</u> <u>United Energy</u>, 837 F.2d at 364 (finding the enterprise "at least somewhat separate" from the racketeering activity conducted."). Thus, where an enterprise consists of a joint venture, the venture must still meet the characteristics established in <u>Chang</u> to indicate an enterprise separate and distinct from its alleged illegal conduct.

Methods for directing group decision-making and for dispersing the proceeds of alleged illegal transactions are highly indicative of the separate structure required of a RICO enterprise. <u>Chang</u>, 80 F.3d at 1299; <u>Simon</u>, 208 F.3d at 1083-84. A structure for making decisions is characterized by a method of ongoing, rather than ad hoc control over the group's affairs. <u>Id.</u> An agreement to disburse proceeds of alleged racketeering activity does not demonstrate a disbursement structure separate and apart from the predicate acts where the funds are dispersed according to ordinary business practices. <u>Chang</u>, 80 F.3d at 1300. In <u>Simon v. Value Behavioral Health, Inc.</u>, the court's analysis considered the <u>Chang</u> characteristics of (1) a structure beyond the racketeering activity, (2) a separate system of authority guiding the enterprise's operation, and (3) a structure separate from the predicate acts to distribute the proceeds of the allegedly fraudulent transactions as factors that indicate the existence of an enterprise. 208 F.3d at 1083-84. Finding allegations of each factor absent, the court determined there was no RICO enterprise. <u>Id.</u>

Allegations of conspiracy do not state a claim under RICO § 1962(c). In <u>Chang</u>, the court found that when a member of that alleged enterprise agreed to perform his role in the alleged racketeering conspiracy, "he entered into a conspiracy to commit the predicate acts of racketeering activity." 80 F.3d at 1300. The court specified that "[a] conspiracy, however, is not an enterprise for purposes of RICO." <u>Id.</u>; <u>Simon</u>, 208 F.3d at 1083.

Plaintiffs in this case have not alleged the existence of an enterprise separate and distinct from the alleged racketeering activity. Plaintiffs argue that "[a] reasonable inference is that the account activations are implemented through a set of personnel and procedures different from those

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 6

responsible for other alliance marketing activities. . . . [i]t would be unreasonable to assume the contrary." (Dkt. No. 75 at 12). As an initial matter, the argument is entirely based on an "inference," rather than concrete factual allegations. Conclusory allegations and unwarranted inferences are not sufficient to defeat a motion to dismiss. Associated Gen. Constr. v. Metro. Water District, 159 F.3d 1178, 1181 (9th Cir. 1998).

Furthermore, even if plaintiffs' inference is assumed to be true for the purposes of this motion, the circumstances described in plaintiffs' pleadings do not indicate a separate enterprise under the Chang factors. Though there are allegations that the enterprise pursued legal activities as well as illegal ones, allegations of a separate structure that engaged in the predicate acts of mail and wire fraud are noticeably absent from the complaint. There is no allegation that there was a subset of actors carrying out illegal activities separately from those carrying out legal marketing activities. Except for the general statement that decisions guiding the enterprise are "made jointly" by Microsoft and Best Buy, there are no allegations that describe a method through which decisions are made and the performance of various participants can be guided, or a subset of executives that direct the racketeering activities. While Microsoft technicians may indeed be separate from Microsoft marketers, an additional inference is required to conclude that Microsoft technicians and Best Buy sales staff are cohorts in a separate structure.

Finally, plaintiffs' allegation that "for each MSN trial subscription activated at Best Buy, Best Buy receives a flat payment . . . [and later] receives a portion of each monthly MSN charge paid by the customer" does not indicate a structure for distributing proceeds separate from the predicate acts. The fact that defendants have agreed to split the proceeds from MSN accounts is not distinct from the act of activating and charging the accounts where, as here, a profit-sharing arrangement is typical of a joint-merchandising agreement. In short, because the complaint does not sufficiently allege a separate enterprise, a separate system of authority from the one that directed the alleged racketeering activity, or a separate structure that disbursed proceeds from the alleged wire fraud, plaintiffs have failed to

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 7

demonstrate anything more than a conspiracy - and a conspiracy does not satisfy RICO's enterprise requirement.

Since plaintiffs do not state a claim for a violation of § 1692(c), their claim for conspiracy to violate that section necessarily fails. A claim under subsection (d) is dependent on a claim under one of the previous subsections. Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1112, as amended by 352 F.3d 1187 (9th Cir. 2003); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000); see also Howard v. America Online Inc., 208 F.3d 741, 751 (9th Cir. 2000), cert. denied, 531 U.S. 828 (2000).

B. Pleading Predicate Acts of Racketeering Activity with Sufficient Particularity

Defendants' second basis for dismissal of the RICO claims is that plaintiffs have not plead with sufficient particularity that either Microsoft or Best Buy engaged in racketeering activity, specifically in the predicate act of wire fraud. A wire fraud complaint must allege (1) the existence of a scheme to defraud; (2) the defendant's knowing or intentional participation in the scheme; (3) specific intent to deceive or defraud; and (4) the use of the U.S. wires or causing a use of U.S. wires in furtherance of the scheme. Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986); Perez v. Volvo Car Corp., 247 F.3d 303, 312-313 (1st Cir. 2001). Wire fraud allegations are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). Schreiber, 806 F.2d at 1401. Defendants argue that plaintiffs make only conclusory allegations and fail to describe with any particularity the defendants' respective roles in the scheme, scienter on the part of either defendant, or an intent to deceive or defraud customers by either Best Buy sales staff or their supervisors.

Plaintiffs have not alleged facts that connect Microsoft to actions by Best Buy employees, nor have they specified the Best Buy policy under which the allegedly fraudulent acts are taken. Facts that indicate Microsoft's notification of consumer displeasure after the alleged fraud took place does not suffice to demonstrate Microsoft's knowledge or participation in a plan to defraud. Though specific intent may be averred generally from the scheme itself, it must be predicated on factual

ORDER DISMISSING COUNTS ONE AND
TWO OF THE FIRST AMENDED COMPLAINT - 8

allegation of a scheme. See Sun Savings and Loan Association v. Dierdorff, 825 F.2d 187, 195-96 (9th Cir. 1987); Schreiber, 806 F.2d at 1400. Because plaintiffs have not alleged the existence of a scheme or the defendant corporations' knowledge and intent in executing that scheme, the predicate acts of racketeering have not been established.

## CONCLUSION

The Court concludes that plaintiffs have not met their burden under the requirements of Federal Rules of Civil Procedure 12(b)(6) and Rule 9(b) to allege facts supporting claims under RICO. The Court therefore GRANTS defendants' motion to dismiss and DISMISSES claims One and Two of the First Amended Complaint.

The Clerk is directed to send copies of this order to all attorneys of record.

Dated: March ___, 2004.

Marsha J. Pechman
United States District Judge